1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| ROBERT MITCHELL, | CASE NO. 04cv550-WQH (WMc) |
|---|---|
| Plaintiff, | REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT |
| vs. | |
| BRANHAMWD[1], and GUTHRIE, | |
| Defendant. | |

In this prisoner civil rights case, Robert Mitchell ("Plaintiff"), is proceeding *pro se* and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Plaintiff alleges that Correctional Officers Branham and Gutherie ("Defendants") violated his civil rights while an inmate at Centinela State Prison.

**I. PROCEDURAL BACKGROUND**

Due to recent procedural activity in this case, a synopsis of the most recent procedural history is presented here. On August 8, 2006, in the above captioned case, Plaintiff submitted to the Court a document captioned Motion For Voluntary Dismissal Pursuant to F.R.C.P. Rule 41 (a)(2). In his motion, Plaintiff sought to dismiss five specifically named defendants. Submitted simultaneously with the motion was Plaintiff's First Amended Complaint. At that time, Plaintiff's First Amended Complaint was erroneously filed without leave of Court and without written

---
[1] The proper spelling of Defendant's name is Branham. [ See Doc. No. 8].

- 1 -                                                              04-550-WQH(WMc)

1  consent of the Defendants. See Fed.R.Civ.P 15.  On August 21, 2006, Magistrate Judge McCurine
2  filed an order requiring Defendants to respond to Plaintiff's motion for voluntary dismissal.
3  Coincidentally, also filed on August 21, 2006, was a  Notice of Non-Opposition to Plaintiff's
4  Request to Dismiss submitted by Defendants.  Shortly thereafter, on September 7, 2006,
5  Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint.

6  By order of District Judge Hayes, Plaintiff's First Amended Complaint was ordered filed
7  *nunc pro tunc* to August 22, 2006.  Judge Hayes also ordered defendants Durazo, Marquez,
8  Chacon, Bocanegra, and Rodriguez dismissed from the complaint with prejudice.

9  Therefore, currently pending before the Court is a Motion to Dismiss Plaintiff's First
10 Amended Complaint brought pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 41] filed on behalf of
11 Centinela State Prison officials Branham and Guthrie.  On September 28, 2006, Plaintiff filed an
12 Opposition. [Doc. No. 42].  Defendants' Reply was rejected as untimely and not accepted for
13 filing. [Doc. No. 44].

14              **II.  FACTUAL BACKGROUND**

15 In his First Amended Complaint, Plaintiff alleges that his civil rights have been violated
16 and he asserts three causes of action: 1) retaliation for filing a complaint against the prison and its
17 employees; 2) equal protection; and 3) negligence.

18 The following is taken from the parties' pleadings and is not to be construed as
19 findings of fact by the Court.

20 On July 2, 2002, defendants Branham and Guthrie entered the prison law library
21 and told Plaintiff he had to leave.  Plaintiff had almost completed his legal work and requested
22 enough time to complete the mailing of his legal materials in regard to a lawsuit he had pending in
23 Orange County. (FAC at 4.)  That request was denied and, according to Plaintiff, defendant
24 Branham confiscated all the legal materials Plaintiff had with him in the library at that time. *Id*.
25 One week later Plaintiff was allowed back in the law library and watched while his legal
26 documents were placed in an envelope for mailing. (FAC at 6.)  Plaintiff alleges that as a result of
27 the conduct of the Defendants, he was denied access to the courts and his case was dismissed.
28 (FAC at 6.)

## II. DEFENDANTS' FED.R.CIV.P. 12(B)(6) MOTION

Defendants seek dismissal of Plaintiff's Complaint on the grounds that: (1) Plaintiff failed to sufficiently allege a claim of retaliation; (2) Plaintiff fails to state a claim for an equal protection violation; (3) Plaintiff fails to sufficiently allege a negligence claim; and (4) Defendants are entitled to qualified immunity.

### 1. Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). In deciding such a motion, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill*, 80 F.3d at 338. Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro*, 250 F.3d at 732 (citing *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988)).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may generally not consider materials outside the pleadings. *Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "The focus of any Rule 12(b)(6) dismissal. . .is the complaint." *Id.* at 1197 n.1. Finally, where a plaintiff appears *in propria persona* in a civil rights case, the court must also be careful to construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc). The rule of liberal construction "is particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). In giving liberal interpretation to a *pro se* civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th

1  Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are
2  not sufficient to withstand a motion to dismiss." *Id*.; see also *Sherman v. Yakahi*, 549 F.2d 1287,
3  1290 (9th Cir. 1977) ("Conclusory allegations, unsupported by facts, [will be] rejected as
4  insufficient to state a claim under the Civil Rights Act."). Thus, at a minimum, even the *pro se*
5  plaintiff "must allege with at least some degree of particularity overt acts which defendants
6  engaged in that support [his] claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646,
7  649 (9th Cir. 1984).

### 2. Retaliation

9  Defendants argue that "Plaintiff fails to set forth all of the requisite elements of retaliation
10 against Defendants Branham and Guthrie." (Defs. Mtn to Dismiss at 4.)

11 In Plaintiff's FAC, he claims that defendants seized his legal papers related to ongoing
12 "state civil rights and state tort complaints" in retaliation for having previously filed an unrelated
13 federal civil rights lawsuit. Plaintiff further alleges that Defendants' retaliatory acts were based on
14 their "invidious discriminatory animus" because Plaintiff is African-American. (FAC at 8.)

15 The Ninth Circuit has recently reiterated the elements necessary to establish a First
16 Amendment retaliation claim in the prison context:

> **Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.** *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); see also *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).

Plaintiff has alleged in his First Amended Complaint that on July 2, 2002, Defendant Branham along with defendant Gutherie "confiscated all of plaintiff's legal documents and extracted him from the law library." (FAC at 4.) In particular, Plaintiff alleges that the Defendants arrived in the law library after having been called by Defendant Guthrie and Librarian Assistant L. Salgado to inform them that Plaintiff "was processing Civil Complaints." (*Id*.) Plaintiff claims that despite the fact that all he had to do was "address his envelopes and mail out his documents," he was told by Defendant Branham "your not mailing anything out and you have to get out right now!" (*Id*.) These statements are sufficient to establish the first three elements of the retaliation

1  claim.

2  Furthermore, Plaintiff has shown that he was harmed by the actions he claims were taken
3  by Defendants, and that their actions did not reasonably advance a legitimate penological goal. "In
4  a constitutional tort, as in any other, a plaintiff must allege that the defendant's actions caused him
5  some injury." *Resnick*, 213 F.3d at 447.

6  The Ninth Circuit has held that in a First Amendment retaliation action an inmate is not
7  required to demonstrate that his speech was actually inhibited or suppressed." *Rhodes*, 408 F.3d at
8  569. "[A]llegations that [an inmate's] First Amendment rights were chilled, though not necessarily
9  silenced, is enough to perfect [a] claim." *Id*.  The fact that Plaintiff was deterred, even
10 temporarily, in his ability to proceed with his pending civil lawsuit is sufficient to demonstrate that
11 the defendants were acting intentionally to interfere with his outgoing legal mail for the purpose of
12 retaliating against him for exercising his First Amendment rights.

13 Defendants assert that Plaintiff has failed to state a claim for four reasons. One, no
14 evidence has been presented that Defendants' "withholding of Plaintiff's legal materials" was
15 adverse. (Defs. Mtn to Dismiss at 4.)  Two, no evidence has been presented that Defendants'
16 "acted in response to Plaintiff's protected conduct." (Defs. Mtn. to Dismiss at 5.) Three, no
17 evidence has been presented that Defendants' actions chilled Plaintiff's First Amendment rights.
18 (Defs. Mtn. to Dismiss. at 6.)  Four, no evidence has been presented that "Defendants' actions did
19 not reasonably advance a legitimate penological goal." (Defs. Mtn. to Dismiss at 6.)

20 The facts as stated in Plaintiff's complaint are clear.  According to Plaintiff, Defendant
21 Branham entered the law library after being called by Defendant Gutherie and Librarian Assistant
22 Salgado.  "The plaintiff repeatedly tried to explain to the defendants that he had a court deadline,
23 in which to have his legal documents filed with the court and all he needed to do was address his
24 envelopes and mail out his documents." (FAC at 4.)  On its face, these statements demonstrate that
25 both the named defendants had knowledge that Plaintiff was engaged in a protected activity and
26 that their actions could be construed as arising from a desire to interfere with that protected
27 activity.  Contrary to Defendants' argument, Plaintiff did proffer allegations "which, if true, satisfy
28 all of the elements for a First Amendment retaliation claim as established by *Rhodes v. Robinson*,

1    408 F.3d at 567-568." (Defs. Mtn to Dismiss at 6.)

2    Because Plaintiff has alleged sufficient facts that support a cognizable legal theory, it is
3    recommended that Defendants' motion to dismiss this claim be **DENIED**.

4    **3. Plaintiff's Equal Protection Claim**

5    Judge Hayes, in his Order filed September 30, 2005, granted Plaintiff's request to
6    voluntarily dismiss his Equal Protection claim without prejudice and with leave to amend. (Ct.
7    Order at 9.) In his First Amended Complaint, Plaintiff re-asserts his equal protection claim
8    alleging that "Defendants and each of them, possess invidious discriminatory animus, and it was
9    this animus towards African-Americans, that was the catalysis [sic] behind Defendants W. Guthrie
10   and W. Branhamwd [sic] encouraging, tolerating and ratifying the retaliatory conduct and
11   selectively denying him administrative and protective services." (FAC at 12.)

12   Defendants seek to dismiss Plaintiff's equal protection claim on the ground that Plaintiff
13   provides only conclusory allegations unsupported by facts and insufficient to state a claim under
14   the Civil Rights Act. (Defs. Mtn. to Dismiss at 7.)

15   "'The purpose of the equal protection clause of the Fourteenth Amendment is to secure
16   every person within the State's jurisdiction against intentional and arbitrary discrimination,
17   whether occasioned by express terms of a statute or by its improper execution through duly
18   constituted agents.'" *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (quoting
19   *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)); *Village of Overbrook*
20   *v. Olech*, 528 U.S. 562, 564 (2000).

21   Conclusory allegations of discrimination are insufficient to withstand a motion to dismiss,
22   unless the plaintiff alleges facts which may prove invidious discriminatory intent. *Village of*
23   *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977).
24   Therefore, when an equal protection violation is alleged, the plaintiff must plead facts to show that
25   the defendant "acted in a discriminatory manner and that the discrimination was intentional."
26   *FDIC. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted); *Reese v. Jefferson*
27   *School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). "'Discriminatory purpose' . . . implies more
28   than intent as volition or intent as awareness of consequences. It implies that the decision maker .

1 . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in
2 spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of*
3 *Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

4     The allegations of an equal protection violation presented in Plaintiff's First Amended
5 Complaint are vague and conclusory.  Plaintiff does not allege any statements or actions made by
6 Defendants that rise to the level of an equal protection violation based upon race. Plaintiff does not
7 allege that either defendant made specific derogatory racial remarks at the time of the alleged
8 incident.  Even if Plaintiff had properly alleged Defendants' use of racial slurs, "verbal abuse is
9 not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v.*
10 *Ruggiero*, 830 F.3d 136, 139 (9th Cir. 1987).

11     Neither does Plaintiff sufficiently assert that Defendants' alleged retaliatory actions were
12 directed only to African-American inmates.  What is required is proof of an intent to discriminate.
13 *Washington v. Davis*, 426 U.S. 229 (1976).  Petitioner fails to assert *any* circumstances wherein
14 Defendants singled out African-American inmates for intentional discriminatory treatment.

15     Accordingly, it is recommended that Defendant's motion to dismiss Plaintiff's equal
16 protection claim be **GRANTED**.

17     **3. Negligence**

18     Defendants move to dismiss Plaintiff's cause of action on a state negligence claim arguing
19 that Plaintiff has failed to state a claim.  Specifically, Plaintiff contends that "[d]efendants, and
20 each of them, breached their duty of care by disregarding the high probability that their conduct
21 would likely result in shock, and anguish to plaintiff." (FAC at 13.)

22     Defendants cite *United States Liability Insurance Company v. Haidinger-Hayes*, 83 Cal.
23 Rptr. 418, 1 Cal. 3d 586, 594 (1970), to support their motion based upon Plaintiff's failure to state
24 a claim. Defendants' reference to page 594 in *Haidinger-Hayes*, *id.*, leads to a broad definition of
25 the duty of care.  Defendants cite no additional persuasive legal authority to support their motion
26 to dismiss this claim.

27     As discussed previously, a claim may be dismissed only if "it appears beyond doubt that
28 the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

1 *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In his complaint Plaintiff alleges that "as a result of
2 Defendants W. Gutherie and W. Branhamwd [sic] not allowing plaintiff to mail out his legal
3 documents, then confiscating and withholding his legal documents for approximately one week,
4 plaintiff [sic] state civil rights and state tort complaints were dismissed for 'failing to prosecute
5 time barred' [sic]." (FAC at 6.)  Plaintiff argues that these acts were "unreasonable under the
6 circumstances" and that he has suffered mental distress and aggravation as a result of Defendants'
7 negligent acts. (FAC at 13.)

8 As stated in Judge Hayes' order of September 30, 2005, "[b]ased on the current record, the
9 Court finds Plaintiff has sufficiently alleged all of the elements of a negligence claim, and thus,
10 must survive a motion to dismiss at this time."  Since Plaintiff has essentially reasserted his
11 negligence claim and Respondents have presented no new argument on this issue, it is
12 recommended that Defendants' motion to dismiss Plaintiff's negligence claims pursuant to
13 Fed.R.Civ.P. 12(b)(6) be **DENIED**.

14 **4. Qualified Immunity**

15 Defendants argue that, if Plaintiff's complaint states a claim for relief on the access-to-
16 courts and retaliation claims, they are entitled to qualified immunity with regard to those claims.
17 Qualified immunity is an affirmative defense. *Groten v. California*, 251 F.3d 844, 851 (9th Cir.
18 2001).  The entitlement to qualified immunity "is an immunity from suit rather than a mere
19 defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The defense of "qualified
20 immunity" protects "government officials . . . from liability for civil damages insofar as their
21 conduct does not violate clearly established statutory or constitutional rights of which a reasonable
22 person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

23 Defendants have moved to dismiss under Fed.R.Civ.P. 12(b)(6), thus this Court can only
24 grant qualified immunity if the facts set forth in the complaint establish Defendants' entitlement to
25 qualified immunity.  *Id.*; see also *Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999).  "If no
26 constitutional right would have been violated were the allegations established, there is no necessity
27 for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Haynie v. County*
28 *of Los Angeles*, 339 F.3d 1071, 1078 (9th Cir. 2003).  As discussed above, based upon the facts

1 presented in his complaint Plaintiff has clearly set forth a retaliation claim. Prisoners have a
2 clearly established right to be free from retaliation for participating in protected First Amendment
3 speech activities. *Pratt v. Rowland*, 65 F.3d 802, 806 &no. 4 (9th Cir. 1995). To succeed on his
4 retaliation claim, Plaintiff must demonstrate that the prison official's retaliation was a result of his
5 exercise of his First Amendment rights. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).
6 Plaintiff must also demonstrate that the retaliation was not a reasonable exercise of prison
7 authority and did not serve any legitimate correctional goal. In this case, Plaintiff has successfully
8 alleged that Defendants intentionally and maliciously withheld his legal documents for over a
9 week knowing Plaintiff had to meet a deadline in his pending state court case. Accepting those
10 allegations as true (which the Court must do), Plaintiff has alleged that his First Amendment rights
11 have been violated. Therefore, Defendants are not entitled to qualified immunity on the current
12 motion. *Morely v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (also noting that the issue of qualified
13 immunity is more properly raised by summary judgment). Therefore, it is recommended that
14 Defendants' motion to dismiss based upon qualified immunity be **DENIED**.

### III. CONCLUSION

16 For the reasons set forth herein, it is recommended that Defendants' Motion to Dismiss
17 Plaintiff's Equal Protection claim in accordance with Fed.R.Civ.P. 12(b)(6) be **GRANTED** and
18 Defendants' Motion to Dismiss Plaintiff's retaliation claim and negligence claim be **DENIED.**
19 Additionally, it is recommended that Defendants' motion for qualified immunity be **DENIED** at
20 this time. This report and recommendation will be submitted to the United States District Judge
21 assigned to this case, pursuant to the provisions of 28 U.S.C. §636 (b)(1) (1988). Any party may
22 file written objections with the court and serve a copy on all parties by *April 2, 2007*. The
23 document should be captioned "Objections to Report and Recommendation." Any reply to the
24 objections shall be served and filed by *April 20, 2007*.
25 //
26 //
27 //
28 //

1  The parties are advised that failure to file objections within the specified time may waive the right
2  to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.
3  1991).

4      **IT IS SO ORDERED.**

5  **DATED:  March 7, 2007**

                                                                           */s/ W. McCurine Jr.*

7                                                  **Hon. William McCurine, Jr.**
                                                **U.S. Magistrate Judge**
8                                                  **United States District Court**

9  cc: Honorable William Q. Hayes
      U.S. District Court
10
    All Counsel and Parties of Record