# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MITCHELL,<br><br>　　　　　　　Plaintiff,<br>　vs.<br><br>BRANHAMWD[1], and GUTHRIE,<br><br>　　　　　　　Defendant. | CASE NO. 04cv550-WQH (WMc)<br><br>REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

In this prisoner civil rights case, Robert Mitchell ("Plaintiff"), is proceeding *pro se* and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Plaintiff alleges that Correctional Officers Branham and Gutherie ("Defendants") violated his civil rights while an inmate at Centinela State Prison.

**I. PROCEDURAL BACKGROUND**

On May 25, 2007, Judge Hayes granted Defendants' Motion to Dismiss Plaintiff's Equal Protection claim and denied Defendants' Motion to Dismiss Plaintiff's retaliation and negligence claims. Thereafter on June 8, 2007, Defendants filed an Amended Answer to Plaintiff's First Amended Complaint ("FAC"). On October 19, 2007, Plaintiff filed a Motion For Leave to File a Second Amended Complaint. Defendants filed an opposition to that motion on November 15, 2007. On December 12, 2007, Defendants filed a Motion for Summary Judgment ("MSJ").

---

[1] The proper spelling of Defendant's name is Branham. [Docket No. 8].

1  Thereafter, Judge Hayes issued an order denying Plaintiff's Motion to File a Second Amended
2  Complaint and ordered that "[t]he First Amended Complaint remains the operative pleading in this
3  case." [Docket No. 62, p. 4].

4  Plaintiff was provided notice by the Court with notice of summary judgment in conformance with
5  *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). On January 11, 2008, Plaintiff filed an
6  Opposition. [Doc. No. 65]. Defendants' Reply was filed on January 18, 2008. [Doc. No. 66].

## II. FACTUAL BACKGROUND

8  In his First Amended Complaint, Plaintiff alleges that his civil rights have been violated
9  and he asserts three causes of action: 1) retaliation for filing a complaint against the prison and its
10 employees; 2) equal protection; and 3) negligence.

11 The following is taken from the parties' pleadings and is not to be construed as
12 findings of fact by the Court.

### **Plaintiff's Factual Summary:**

14 On July 2, 2002, was attending the law library, when he witnessed and overheard
15 Defendant Guthrie call Defendant Branham on the telephone and say, 'the inmate who filed the
16 lawsuit suing everybody. . . yea (sic)! Inmate Mitchell, well he's in here processing more lawsuits
17 lawsuits on correctional officers, you need to get in here and stop this right away." Immediately
18 after the call, Defendant Branham stormed into the law library with approximately eight
19 correctional officers. refused to allow plaintiff to mail any legal document to court, then
20 confiscated all plaintiff's legal documents and materials and forcefully removed him from the law
21 library.

22 Plaintiff explained to both defendants several times that he was not finished, that all he had
23 to do was address his envelopes and mail out his legal documents.

24 Defendants Guthrie and Branham both told plaintiff 'we are not allowing you to mail out
25 anything. You have to get out the law library right now.'

26 Plaintiff told Defendants Guthrie and Branham several times that he had a Court deadline
27 to file his legal documents with the Court.

28 Plaintiff also explained to both defendants that it was only approximately 3:30 p.m, that the
law library doesn't close until 4:00 p.m., that other inmates were being allowed to stay, continue

1  their research and mail out their legal documents and that he should also be allowed to stay and
2  mail out his legal documents. (Pl.'s Opp. at 3-4.)

3  Plaintiff immediately started gathering up his legal documents and materials to exit the law
4  library, when Defendant Branham took his right hand and slammed it on top of Plaintiff's legal
5  documents and said, "your not taking any of your legal documents or materials with you."

6  Plaintiff again asked both defendants, why couldn't he take his legal documents and
7  materials back to his housing unit and mail out his legal documents from there?

8  Both defendants replied "because we said so!" Plaintiff again asked for an explanation,
9  why was he not being allowed to mail out or leave with his legal documents, when other inmates
10 were being allowed to mail out their legal documents and take them back to their housing unit. (Pl.
11 Opp. at 5.)

12 Plaintiff told both defendants that he would be filing a complaint on them regarding their
13 conduct. Defendant Branham replied in a sarcastic ton, this is why your (sic) not mailing anything
14 out. I don't care. Then pointed to his name tag on his uniform and said, Just be sure you spell my
15 name right because everyone spells my name wrong.

16 Defendants Guthrie and Branham both started laughing, then confiscated all of plaintiff's
17 legal documents and materials. Plaintiff was the forcefully extracted out of the law library. (Pl.
18 Opp. at 5.) One week later Plaintiff was allowed back in the law library and watched while his
19 legal documents were placed in an envelope for mailing. (FAC at 6.)

20 **Defendants' Version:**

21 On July 2, 2002, Officer W. Guthrie was working at Centinela State Prison in the Facility
22 C law library as the law library officer, from 8:00 a..m. to 4:00 p.m.

23 Officer Guthrie's duties as the law library officer are to maintain order and security in the
24 law library, and supervise and count inmates. The Library Technical Assistant (LTA) is in charge
25 of inmates' legal deadlines, priority library access, supervising inmate law clerks, and helping
26 inmates to find books and other materials.

27 On the afternoon of July 2, 2002, Plaintiff was working on copying and organizing some
28 legal documents in the law library. Officer Guthrie was not aware what case or what matter
Plaintiff was working on. Officer Guthrie knew Plaintiff has a suit against Orange County but he

1 was not aware of any lawsuit Plaintiff had filed against the Department of Corrections.

2 At approximately 3:10 p.m., Officer Guthrie informed Plaintiff and the other C Facility
3 inmates that their law library time was up.  All the other inmates except Plaintiff gathered up their
4 materials and left the law library.

5 Plaintiff had completed his photocopies but had not yet completed stapling his papers and
6 putting his packages together for mailing, and his original legal materials were commingled with
7 the copies he had been making. Officer Guthrie allowed Plaintiff some extra time in order to try
8 and finish his project. After 3:30 p.m., Plaintiff still was not ready to mail out his copies.

9 At approximately 3:40 p.m., Officer Guthrie told Plaintiff he needed to leave the law
10 library so staff could close things down.  Because Plaintiff continued to argue with Officer Guthrie
11 when he was asked to leave, Officer Guthrie finally called Sergeant Branham to have Plaintiff
12 escorted out of the law library.

13 Sergeant Branham reported to the law library to escort an unruly inmate from the library.
14 Plaintiff was refusing to leave the library, insisting that he be given more time to finish copying his
15 legal materials before mailing out filings to the court.  Plaintiff's materials were confiscated and
16 put into a box and locked in a storage room to be returned to him on his next library visit.  (MSJ at
17 4-6.)

18 **III.  DEFENDANTS' FED.R.CIV.P. 56 MOTION**

19 Defendants seek summary adjudication of Plaintiff's Complaint on the grounds that: (1)
20 Plaintiff failed to sufficiently allege a claim of retaliation; (2) Plaintiff fails to state a claim for an
21 equal protection violation; (3) Plaintiff fails to sufficiently allege a negligence claim; and (4)
22 Defendants are entitled to qualified immunity.

23 Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of a summary
24 judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file,
25 together with the affidavits, if any, show that there is no genuine issue as to any material fact and
26 that the moving party is entitled to judgment as a matter of law." The standard for granting a
27 motion for summary judgment is essentially the same as for the granting of a directed verdict.
28 Judgment must be entered, "if, under the governing law, there can be but one reasonable
conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

However, "[i]f reasonable minds could differ," judgment should not be entered in favor of the moving party. *Id.*

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby*, 477 U.S. at 252; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. *at* 323. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000)(citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988), *Nilsson v. Louisiana Hydrolic*, 854 F.2d 1538, 1545 (9th Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to ." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the moving papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions

"cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### A. Retaliation

Plaintiff argues in his First Amended Complaint that the confiscation and ejection from the law library by Defendants were taken in retaliation for his free speech activities and as such violated his First Amendment Rights.

Defendants argue they are entitled to summary judgment on this claim as "Plaintiff cannot prevail on this claim because Defendants' temporary confiscation of Plaintiff's documents reasonably advanced legitimate penological goals and Defendants did not act in retaliation for Plaintiff's exercising his First Amendment rights." (MSJ at 6.)

The Ninth Circuit has identified the elements necessary to establish a First Amendment retaliation claim in the prison context:

> **Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.** *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); see also *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997).

Plaintiff has alleged in his First Amended Complaint that on July 2, 2002, Defendant Branham, along with defendant Gutherie, "confiscated all of plaintiff's legal documents and extracted him from the law library." (FAC at 4.) In particular, Plaintiff alleges Defendants arrived in the law library after having been called by Defendant Guthrie and Librarian Assistant L. Salgado to inform them that Plaintiff "was processing Civil Complaints." (*Id.*) Plaintiff claims despite the fact that all he had to do was "address his envelopes and mail out his documents," he was told by Defendant Branham "your (sic) not mailing anything out and you have to get out right now!" (*Id.*) These statements are sufficient to prove the first three elements of the retaliation claim.

In regard to the fourth element, the Ninth Circuit has held that in a First Amendment retaliation action "an inmate is not required to demonstrate that his speech was actually inhibited or suppressed." *Rhodes*, 408 F.3d at 569. "[A]llegations that [an inmate's] First Amendment rights

were chilled, though not necessarily silenced, is enough to perfect [a] claim." *Id*. The fact that Plaintiff was deterred, even temporarily, in his ability to proceed with his pending civil lawsuit is sufficient to demonstrate the defendants were acting intentionally to interfere with his outgoing legal mail for the purpose of retaliating against him for exercising his First Amendment rights.

In Plaintiff's FAC, he claims that Defendants seized his legal papers related to ongoing "state civil rights and state tort complaints" in retaliation for having previously filed an unrelated federal civil rights lawsuit. Plaintiff reiterated in his deposition the following factual allegations presented in his FAC:

> **Plaintiff: When I was processing my legal work in the law library, Defendant Guthrie, I witnessed him pick up a telephone and I overheard him tell Sargeant Branham that he had this inmate that is in here, Mitchell, the one that is suing everybody, you need to get in here because he is processing more civil complaints. You need to stop this, and immediately after the call, about a minute later Defendant Branham stormed into the law library . . . immediately stopped me from doing any of my legal activities. Took his right hand, slammed it on top of my legal documents and told me you're not mailing anything out, you have to get out of the library now. (Pl.'s Depo at 21.)**

Here, Plaintiff has established the first four elements in support of a First Amendment retaliation claim: 1) Plaintiff was ordered to leave the law library without his legal documents despite Plaintiff's claim that he was working pursuant to a court deadline; 2) & 3) Defendants' actions were in retaliation for the grievances and civil law suits that Plaintiff regularly filed; and, 4) Plaintiff was prevented from working on his pending court cases and missed a filing deadline in state court. (FAC at 4.)

However, there is no evidence Defendants' actions were not motivated by a legitimate correctional goal. "The Court must 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "The burden is on plaintiff to demonstrate 'that there were no legitimate correctional purposes motivating the actions he complains of.'" *Id.* at 808.

Defendants rely heavily on the claim that their actions were necessary to advance a

1  legitimate penological goal. ( MSJ at 9.)  Specifically, Defendants assert Plaintiff overstayed his
2  allotted two hours at the law library in contravention of Department of Operations Manual
3  Supplement. (Exhibit G.)   Defendants also cite to a memorandum relating to Law Library
4  Procedures dated April 25, 1997, providing in pertinent part, "There are no provisions for inmates
5  to be allowed extra time to prepare their documents for mailing, beyond the allotted library time."
6  (Guthrie Decl. ¶ 11.)

7       Here, Plaintiff fails to contradict the evidence presented in the declarations by Defendants
8  Branham and Guthrie.  Both declarations assert Plaintiff was, in fact, removed from the library
9  without his legal papers because Plaintiff was repeatedly told by Officer Guthrie he needed to
10 leave the law library so staff could close things down and because "Plaintiff continued to argue
11 with Officer Guthrie when he was asked to leave." (MSJ at 5.)  Further, "Plaintiff's materials were
12 temporarily held at the library because the copies he had made were inextricably commingled with
13 his legal materials" and "[a]ccording to Centinela's Memorandum regarding Law Library
14 Procedures dated April 10, 1997, all completed  photocopied legal documents will be mailed from
15 the Law Library."  "There are no provisions for inmates to be allowed extra time to prepare their
16 documents for mailing, beyond the allotted law library time." (Guthrie Decl. at 2- 4.)  Taken
17 together the declarations and exhibits produced by Defendants present strong circumstantial
18 evidence that the events which transpired in the prison law library on July 2, 2002 were motivated
19 by a legitimate correctional purpose.

20      Plaintiff attempts to rebut Defendants' declarations and exhibits by arguing that
21 Correctional Officers can use their discretion to allow an inmate to remain in the law library
22 beyond the two hour time limit. (Pl's Depo. at 32 -35.)  However, Plaintiff cannot overcome the
23 well established prison regulations limiting inmates library time to two hours and restricting the
24 manner in which legal documents can be mailed. (Pl's Depo. at 35.)   Therefore, the Court finds
25 Plaintiff has not met his burden.  Plaintiff's failure to meet his burden is fatal to his claim of
26 retaliation.  Without evidence of all five elements, Plaintiff cannot succeed in establishing "a
27 viable claim of First Amendment retaliation." *Rhoades v. Robinson*, 408 F.3d 559, 567 (9th Cir.
28 2004).  Accordingly, it is recommended Defendants' motion for summary judgment on this claim
    be GRANTED.

### B. Qualified Immunity

Defendants assert the affirmative defense of qualified immunity. Qualified immunity entitles government officials to "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Generally, qualified immunity doctrine must "'give [] ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Analysis of qualified immunity begins with the two-step sequence of analysis set forth by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001). Initially, a court must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants' conduct violated constitutional right. *Id*. at 201 (instructing federal courts not to assume the existence of a constitutional right even if it is clear that the defendants would be entitled to qualified immunity). If the answer to that question is no, then the case must be dismissed as there is no valid cause of action. *Vance v. Barrett*, 345 F.3d 1083, 1088 (9th Cir. 2003). On the other hand, if a violation could be made out, the next step is to ask whether the constitutional right was clearly established and, if so, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Saucier* 533 U.S. at 202; *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (*en banc*) (explaining that "we must ask first whether the facts taken in the light most favorable to the plaintiff would establish a [constitutional] violation.... Only if the answer is in the affirmative should we address the immunity issue."); *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (having concluded there was no constitutional violation the court need not reach the issue of qualified immunity).

Because the Court has found no violation of Plaintiff's First Amendment rights, the Court need not reach any issues regarding qualified immunity. *See County of Sacramento v. Lewis*, 523

1  U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of
2  qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation
3  of a constitutional right at all."); see also *Saucier v. Katz*, 533 U.S. 192, 201 (2001) ("If no
4  constitutional right would have been violated were the allegations established, there is no necessity
5  for further inquiries concerning qualified immunity."). For the reasons herein, it is recommended
6  that Defendants' motion for summary judgment on basis of qualified immunity be DENIED as
7  moot.

8  **C.  Judicial Notice**

9  Defendants request that the Court take judicial notice of various documents they have
10 submitted in support of their filings.

11 Judicial Notice is governed by Federal Rule of Evidence 201 which only concerns judicial
12 notice of adjudicative facts. "A judicially noticed fact must be one not subject to reasonable
13 dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or
14 (2) capable of accurate and ready determination by resort to sources whose accuracy cannot
15 reasonably be questioned." *FRE 201*. "[A] party requesting judicial notice bears the burden of
16 persuading the trial judge that the fact is a proper matter for judicial notice." *In re Tyrone F.*
17 *Conner Corporation*, 140 B.R. 771, 781 (United States Bankruptcy Court, E.D. California 1992).
18 "To sustain its burden in persuading the trial judge that the adjudicative fact sought to be noticed is
19 in fact proper for notice under Federal Rule of Evidence 201, the party must (1) persuade the court
20 that the particular fact is not reasonably subject to dispute and is capable of immediate and
21 accurate determination by resort to a source 'whose accuracy cannot reasonably be questioned'...."
22 *Id.* at 781. In other words, "the fact must be one that only an unreasonable person would insist on
23 disputing." *United States v. Jones*, 29, F.3d 1549, 1553 (11th Cir. 1994). Documents that are part
24 of the public record may be judicially noticed to show, for example, that a judicial proceeding
25 occurred or that a document was filed in another court case, but a court may not take judicial
26 notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5
27 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 698 (9th Cir. 2001); *Jones*, 29 F.3d at
28 1553.  Nor may the court take judicial notice of any matter that is in dispute.  *Lee*, 250 F.3d at 689-
   90; *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001).

1  Defendants ask the Court to take judicial notice of "docket and pleadings" for the case of
2  *Mitchell v. California Department of Corrections, et al.*, 01cv2126-PCL (S.D. Cal). (Defendants'
3  Request for Judicial Notice.)
4  The Court may take judicial notice of another court's opinion, but "not for the truth of the
5  facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute
6  over its authenticity." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) *citing Southern
7  Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410-426-27 (3rd Cir.
8  1999).
9  For these reasons, the Court RECOMMENDS Defendants' request for judicial notice be
10  GRANTED as to the case cited by Defendants, *Mitchell v. California, Department of Corrections,*
11  *et al.*. 01cv2126-PCL (S.D. Cal.)
12  For clarity of the record, all of the remaining exhibits submitted by Plaintiff and
13  Defendants may be properly considered by the Court without having to take judicial notice of them
14  pursuant to FRE 201.

**IV.  PLAINTIFF'S MOTION FOR SANCTIONS**

16  In his Opposition, Plaintiff requests that sanctions be imposed upon Defendants counsel
17  "for certifying that to the best of their knowledge, that there are no genuine issues of material fact
18  precluding summary judgment." (Pl.'s Opp. at 25.)   Plaintiff further contends that Defendants'
19  motion for summary judgment "is full of contradictions and has no sound basis." (Pl.'s Opp. at
20  25.) Plaintiff cites Fed.R.Civ.P.11(b) in support of his motion.
21  Defendants assert "[d]efense counsel's motion was brought in good faith, based on factual
22  grounds, and was not brought for the purpose of delay." (Defs. Reply at 5.)
23  The Court finds no evidence in the record or papers submitted to justify imposing sanctions
24  against Defendants pursuant to Fed.R.Civ.P. 11.  Accordingly, it is recommended that Plaintiff's
25  motion for sanctions be DENIED.
26  \\
27  \\
28  \\

## V. NEGLIGENCE CLAIM

At Plaintiff's deposition on October 18, 2007, Plaintiff stipulated to striking his negligence claim. Specifically the deposition states:

> **Q. Tell me about your negligence claim?**
>
> **A. Well, basically I can – That is why I filed an amended pleading. On my amended pleading I believe I struck that claim off. So we can stipulate to that being taken off.**
>
> **Q We can stipulate to dismissing the negligence claim?**
>
> **A. Yeah, pursuant to 41, Federal Rule 41 I dismissed that claim. That one really has no standing so - -**

Accordingly, this Court recommends that Plaintiff's negligence claim be DISMISSED pursuant to the oral stipulation made during Plaintiff's deposition.

## VI. CONCLUSION

For the reasons set forth herein, it is recommended:

 1. Defendants' Motion for Summary Judgment to Dismiss Plaintiff's First Amendment retaliation claim in accordance with Fed.R.Civ.P. 56(c) be **GRANTED.**

2. Defendants' Motion for Summary Judgment to Dismiss Plaintiff's Fourteenth Amendment due process claim be **DENIED as moot.**

3. Defendants' motion for qualified immunity be **DENIED as moot**.

4. Plaintiff's motion for sanctions be **DENIED**.

5. The Parties oral stipulation dismissing Plaintiff's negligence claim be **GRANTED.**

This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636 (b)(1) (1988). Any party may file written objections with the court and serve a copy on all parties by *July 9, 2008*. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed by *July 23, 2008*.

\\

\\

1    The parties are advised that failure to file objections within the specified time may waive
2  the right to raise those objections on appeal of the Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153
3  (9th Cir. 1991).
4    **IT IS SO ORDERED.**
5  **DATED: June 12, 2008**

_____
**Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court**